

Cause No. 2013-10152-16

STATE FARM LLOYDS INSURANCE
COMPANY AS SUBROGEE OF
PAUL AND PAULA MULLER,
   Plaintiff,

vs.

TITEFLEX CORPORATION, GASTITE
DIVISION,
   Defendant.

IN THE DISTRICT COURT

DENTON COUNTY, TEXAS

16 JUDICIAL DISTRICT

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, STATE FARM LLOYDS INSURANCE COMPANY AS SUBROGEE OF PAUL AND PAULA MULLER, "Plaintiff" and complains of TITEFLEX CORPORATION, GASTITE DIVISION, hereinafter referred to as "Defendant TITEFLEX", and for cause of action would respectfully show the Court as follows:

### I. DISCOVERY PLAN

Pursuant to Rules 190.1 and 190.4 of the *Texas Rules of Civil Procedure*, notice is hereby given to the Court and the parties that the discovery to be completed in this case is intended to be conducted under Level Three of the stated rules unless otherwise ordered by the Court.

### II. PARTIES, VENUE AND JURISDICTION

1. Plaintiff, State Farm Lloyds Insurance Company as Subrogee of Paul and Paula Muller, is an insurance company authorized to conduct business in the State of Texas.

2. Defendant, **TITEFLEX CORPORATION, GASTITE DIVISION**, is a Massachusetts corporation authorized to do business in the State of Texas and may be duly served with citation by serving its registered agent: CT Corporation System, 101 Federal Street, Boston, Massachusetts 02110.

3. The "Property" is located at 211 Oregon Trail, Argyle, Denton County, Texas 76226-3925.

4. Venue of this suit is proper in Denton County, Texas pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code for the reason that the occurrence giving rise to this lawsuit is located in Denton County, Texas.

5. The Court has jurisdiction over Defendant for the reason that Defendant is a corporation which is qualified to do business in the State of Texas and, at the time this cause of action accrued, were conducting business in this state. The Court has jurisdiction over the controversy for the reason that the damages sued for are within the jurisdictional limits of this Court.

### III. STRICT PRODUCTS LIABILITY

This case involves a products liability cause of action which arises from the design, manufacturing, and marketing defects of a Titeflex Corporation, Gastite Division, manufactured corrugated stainless steel tubing ("CSST") (hereinafter referred to as "product" or "product in question"). The CSST product in question was installed in a home owned by Mr. and Mrs. Muller and was designed and intended as a flexible gas delivery system.

At all times relevant to this matter, Defendant TITEFLEX was engaged in the business of designing, manufacturing, marketing, and distributing the CSST product in Texas, as well as across the United States.

### IV. FACTS

At all times relevant hereto, Paul and Paula Muller were the owners of the property located at 211 Oregon Trail, Argyle, Denton County, Texas 76226-3925 (the "Property"). At all times relevant to this lawsuit, Defendant GASTITE was the manufacturer of the CSST that was installed in Mr. and Mrs. Mullers' home, specifically at the time of the fire.

On or about May 30, 2012, the Muller family was at home when they heard a loud lightning strike at or near their family home in Denton County, Texas. After the lightning strike, Mr. Muller started to smell smoke, and they evacuated the home and called 911 emergency services. The Argyle Fire Department responded to the emergency call and attempted to extinguish the flames. The fire spread through a wall cavity into the attic space resulting in significant fire damage to the structure.

The evidence will demonstrate that the Mullers' suffered a significant loss to their home and personal possessions after the Corrugated Stainless Steel Tubing ("CSST") located in a wall cavity of their home failed. Much like similar other occurrences involving CSST, the electrical charge produced from a nearby lightning strike at or near the Mullers' home traveled into the residence and the electrical charge arced across the thin-walled CSST, causing it to fail and rupture. The failure of the CSST allowed propane gas to escape and ignite, causing the fire and the resulting damages. It is widely known that the electrical charge produced by lightning can be distributed across the CSST and ultimately cause it to fail as a result of a small puncture or punctures in the thin-walled CSST. The puncture(s) in the CSST allow natural or propane gas to escape which eventually ignites.

Upon information and belief, the CSST which was installed in the Mullers' home was manufactured by Defendant TITEFLEX. Plaintiff seeks recovery from Defendant TITEFLEX for the damages incurred as a result of the fire which was caused by the defective CSST product installed in the Property in question.

## V. CAUSES OF ACTION AGAINST DEFENDANT TITEFLEX

### COUNT ONE -- NEGLIGENCE

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

Plaintiff would show that on the occasion in question, Defendant TITEFLEX owed a duty to exercise ordinary care in its design, preparation, manufacture, and sale of its CSST product. The CSST product in question was defective and unsafe for its intended purposes at the time it left the control of Defendant TITEFLEX and at the time it was installed in the Mullers' residence. The CSST product was defective in that it failed to conform to the product design and specifications of other similar products. But for such occurrence, the probability that Defendant TITEFLEX's CSST product would fail would have been lessened. Defendant TITEFLEX breached this duty and, as a direct and proximate result of its negligence, caused Plaintiff to suffer damages.

The negligent acts and/or omissions on the part of Defendant TITEFLEX also include, but are not limited to, the following:

a. Supplying the defective CSST product in question which Defendant TITEFLEX knew subjected property, both real and personal, to an unreasonable risk of harm;

b. Supplying the CSST product in question to distributors, suppliers, and installers with the knowledge that the CSST product was prone to fail, was defective and unreasonably dangerous to persons and property;

c. Failing to warn the public, specifically including Paul and/or Paula Muller, of the defective condition of the CSST product, which it knew created an unreasonable risk of harm to real and personal property, and/or failed to warn the public and Paul and/or Paula Muller that the CSST product was prone to fail when subjected to the electrical charge emitted from a lightning strike;

d. Failing to conduct sufficient research and development for the CSST product before taking it to U.S. consumer market;

e. Failing to provide, establish and/or follow proper and adequate controls and/or procedures so as to ensure the safety and integrity of the CSST product in the marketplace;

f. Failing to design, construct, fabricate, inspect and/or test the CSST product in question in conformity with the prevailing industry and national standards, including, but not limited to, lightning strike testing;

g. Failing to design the outer jacket of the CSST product so that it would efficiently dissipate the electrical charge produced by a direct or indirect lightning strike;

h. Failing to institute a safer alternative design for the CSST product;

i. Failing to mandate the use of a lightning protection system on structures where the CSST product was installed;

j. Failing to disseminate to consumers, specifically including Paul and/or Paula Muller, and other intermediaries adequate instructions addressing sufficient ways to protect the CSST product from failing;

k. Failing to test the CSST product to ensure its integrity and ability to withstand the electrical charge emitted from a direct lightning strike without it failing;

l. Failing to warn consumers, specifically including Paul and/or Paula Muller, and intermediaries that a 6 AWG bonding/jumper wire will not sufficiently dissipate the electrical charge emitted from a lightning strike;

    m.    Failing to warn consumers, specifically including Paul and/or Paula Muller, and intermediaries, that lightning induced failure of the CSST product can cause fires; and/or,

    n.    Otherwise, failing to use due care in manufacturing and marketing the CSST product to consumers, specifically including Paul and/or Paula Muller.

Each of the above-referenced acts and omissions, either singularly or in combination with others, constitutes negligence, which proximately caused damage to Plaintiff in an amount in excess of the minimum jurisdictional limits of this court.

### Failure to Warn

Plaintiff would show further that Defendant TITEFLEX has an ongoing duty to warn consumers of the inherent dangers in the CSST product, to wit: failure will occur when an electrical charge from lightning is introduced onto the CSST product. Defendant TITEFLEX failed to warn or provide adequate warnings to Paul and/or Paula Muller as it concerned the failure of its CSST product. Defendant TITEFLEX had an absolute duty to warn consumers, and Paul and/or Paula Muller in particular, of the possibility of failure of the CSST product in certain circumstances, and had an ongoing duty to provide adequate warnings concerning the use of its CSST product in the absence of known and readily available safeguards such as a lightning protection system.

Since 1998, Defendant TITEFLEX has had actual knowledge of the danger that its CSST product was failing from the electrical charge emitted from lightning strikes, and has done nothing to modify its product with appropriate safeguards to ensure against continued failures or warn the public and any intermediaries of the dangers associated with its' CSST product and lightning. Plaintiff alleges that any warning or instructions that accompany the CSST product are vague, ambiguous, deficient, and do not adequately inform installers, intermediaries or the consuming public of the hazards associated with the CSST product.

Plaintiff would show further that Defendant TITEFLEX was negligent in failing to issue appropriate warnings to consumers, specifically Paul and/or Paula Muller, of the dangers associated with its CSST product and the susceptibility of the CSST product to the electrical charge produced by a direct or indirect lightning strike.

Defendant TITEFLEX has continued to market and distribute its CSST product knowing that it will not withstand the impact of lightning. Moreover, Plaintiff contend that Defendant TITEFLEX knew that its product would fail if subjected to the electric charge from a lightning strike, and systematically devised a position to defuse and deflect this information by instituting a company wide response that the CSST product does not fail, but is only damaged by a lightning strike.

Defendant TITEFLEX even engaged a public relations firm to address and contain the problem with the CSST product and to develop and implement a media plan to control and/or reduce the negative impact associated with the ever-increasing CSST product failures across the country, and in the State of Texas.

Plaintiff would show that the negligent acts and/or omissions on the part of Defendant TITEFLEX were the proximate cause of damages incurred by Plaintiff in an amount within the jurisdictional limits of this Court.

### COUNT TWO -- STRICT LIABILITY

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

The CSST product in question was defective and unsafe for its intended purposes at the time it left the control of Defendant TITEFLEX, and at the time it was installed in the Mullers' residence. Defendant TITEFLEX knew that its product was defective and that it presented the probability of harm to any foreseeable users unless it was free from defects. Therefore, Defendant TITEFLEX had a duty to foreseeable users, and to Paul and/or Paula Muller in particular, to inspect the CSST product in question to determine whether it would be reasonably fit for its intended purposes and warn or give fair and adequate notice of the inherently dangerous condition which existed as a result of the improper design and/or manufacture of the product.

There was a design defect in the CSST product in question at the time it left the possession of Defendant TITEFLEX that was a producing cause of the occurrence in question and damages set forth herein. The design defect rendered the CSST product in question unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use. A safer alternative design existed that would have prevented or significantly reduced the risk of the occurrence in question without substantially impairing the product's utility and was economically

and technically feasible at the time the product left the control of Defendant TITEFLEX by the application of existing or reasonably achievable scientific knowledge.

### Safer Alternative Design

Defendant TITEFLEX could have implemented a safer alternative design including, but not necessarily limited to, incorporating a copper or other metallic wire running the length of the CSST ("safer alternative design"). The safer alternative design would have prevented the electrical charge from the lightning strike, whether direct or indirect, from traveling on the surface of the thin walled CSST which, in turn, would have prevented the electric charge from breaching the CSST and causing the fire.

Additionally, Defendant TITEFLEX could have implemented an additional safer alternative design by mandating the use of a lighting protection system (LPS) where CSST is installed. The LPS would have addressed known safety concerns and would have prevented, or at least significantly reduced, the probability of the fire which destroyed the Property and the personal property located therein. Defendant TITEFLEX had available to it sufficient information and knowledge needed in order to advise distributors and installers of the safer alternative design but has failed to timely incorporate any such safety device with its product.

The safer alternative design would have prevented or significantly reduced the risk to Paul and/or Paula Muller of property damage from the CSST product without substantially impairing the product's utility. Additionally, including one or both of the safer alternative designs with the CSST was economically and technologically feasible at the time the product left Defendant TITEFLEX's control based on the research and scientific knowledge possessed by Defendant TITEFLEX.

Neither Paul and/or Paula Muller were aware of any defects inherent in the CSST product in question or of any danger that could result from the use thereof at the time they used the CSST product in question. These defects were the proximate and the producing cause of Plaintiff's damages. Such being the case, Plaintiff invokes the doctrine of strict liability in tort.

## COUNT THREE – BREACH OF EXPRESS AND IMPLIED WARRANTY

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

Defendant TITEFLEX held out to the general public, and to Paul and/or Paula Muller specifically, that the CSST product in question would conform with the qualities of the same or similar products. As a result of Defendant TITEFLEX's actions, Defendant TITEFLEX breached an express warranty as set forth in section 2.313 of the Texas Business and Commerce Code.

Defendant TITEFLEX held out to the general public, and to Paul and/or Paula Muller specifically, that the CSST product in question would conform with the qualities of the same or similar products. As a result of Defendant TITEFLEX's actions, Defendant TITEFLEX breached an implied warranty of merchantability and usage of trade as set forth in section 2.314 of the Texas Business and Commerce Code.

Plaintiff has suffered the damages set forth herein as a result of Defendant TITEFLEX's breach of the foregoing warranties and pleads for recovery of all damages, both actual and consequential, pursuant to the applicable sections of the Texas Business and Commerce Code and more specifically, section 2.715(b)(2) of that Code.

## VI. DAMAGES

Plaintiff incorporates the foregoing paragraphs by reference as though fully set forth herein.

As a result of the acts and/or omissions on the part of Defendant TITEFLEX, Paul and Paula Muller sustained damage to their real and personal property, and were forced to incur additional living expenses as a result of being displaced from their home, due to the fire that occurred on or about May 30, 2012, in at least the amount of $132,626.23. Pursuant to a homeowner's insurance policy in effect for the date of loss, Plaintiff, State Farm Lloyds Insurance Company, compensated Paul and Paula Muller for the covered damages they incurred as a result of the fire in question. Plaintiff, State Farm Lloyds Insurance Company, now asserts its contractual and equitable subrogation claims to collect these damages from Defendant TITEFLEX. After allowing for all just and lawful offsets, payments, and credits, Defendant TITEFLEX continues to be indebted to Plaintiff in the total amount of $132,626.23.

Plaintiff hereby asserts its claim for damages as described above. All conditions precedent to Plaintiff's recovery have been performed or have occurred as required.

## VII. REQUEST FOR DISCLOSURE

Plaintiff requests that the Defendant TITEFLEX disclose, within fifty (50) days of the service of this petition and request, the information or material described in Rule 194.2 of the Texas Rules of Civil Procedure.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, **STATE FARM LLOYDS INSURANCE COMPANY AS SUBROGEE OF PAUL AND PAULA MULLER**, requests that Defendant **TITEFLEX CORPORATION, GASTITE DIVISION** be cited to appear and answer herein, and that on final hearing, Plaintiff recovers:

1. A judgment against Defendant for actual damages in the amounts pled for herein, which are within the jurisdictional limits of this Court;

2. A judgment against Defendant for damages for breach of express and implied warranties in the amounts pled for herein, which are within the jurisdictional limits of this Court;

3. A judgment against Defendant for reasonable attorneys fees and costs of court;

4. A judgment against Defendant for pre- and post-judgment interest as allowed by law;

5. A judgment against Defendant for such other and further relief, both general and specific, in equity and at law, to which Plaintiff may be justly entitled.

Respectfully submitted,

CARPENTER & SCHUMACHER, P.C.

By: _____
N. Scott Carpenter
State Bar No. 00790428
**Craig M. Schumacher** (Lead Counsel)
State Bar No. 00791622
Parkway Centre IV
2701 North Dallas Parkway, Suite 570
Plano, Texas 75093
(972) 403-1133
Fax (972) 403-0311
*ATTORNEYS FOR PLAINTIFF*
*STATE FARM LLOYDS AS SUBROGEE OF*
*PAUL AND PAULA MULLER*